No. 23-20145

# In the United States Court of Appeals for the Fifth Circuit

PAMELA CYRILIEN,

*Plaintiff-Appellant,*

*v.*

TEXAS DEPARTMENT OF CRIMINAL JUSTICE,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division

## BRIEF FOR APPELLEE

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LANORA C. PETTIT
Principal Deputy Solicitor General

BENJAMIN WALLACE MENDELSON
Assistant Solicitor General
Ben.Mendelson@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Defendant-Appellee

# Certificate of Interested Persons

No. 23-20145

## Pamela Cyrilien,

*Plaintiff-Appellant,*

*v.*

## Texas Department of Criminal Justice,

*Defendant-Appellee.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellee, as a governmental party, need not furnish a certificate of interested persons.

/s/ Benjamin Wallace Mendelson
Benjamin Wallace Mendelson
*Counsel of Record for Defendant-Appellee*

i

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not believe that oral argument is necessary to resolve this case. Nonetheless, if the Court decides to schedule this case for oral argument, Appellee requests to participate.

# Table of Contents

Page

Certificate of Interested Persons ..................................................................... i

Statement Regarding Oral Argument .............................................................. ii

Table of Authorities ....................................................................................... iv

Introduction .................................................................................................... 1

Statement of Jurisdiction ................................................................................ 2

Issues Presented ............................................................................................. 2

Statement of the Case ..................................................................................... 3

    I.   Factual Background ................................................................................ 3

        A.  Cyrilien's job at TDCJ ................................................................... 3

        B.  Cyrilien's illness and leave time .................................................... 4

        C.  Cyrilien's symptoms and request for accommodation ..................... 5

        D.  Cyrilien's ongoing health problems ................................................ 6

    II.  Procedural History ................................................................................ 7

Summary of the Argument ............................................................................. 7

Standard of Review ........................................................................................ 8

Argument ....................................................................................................... 9

    I.   Cyrilien is Not Otherwise Qualified Within The Meaning of The Rehabilitation Act. ................................................................................ 9

        A.  Cyrilien has not shown that a desk job existed. ............................. 11

        B.  The RA does not require TDCJ to transfer the essential functions of Cyrilien's job to another employee. ............................ 13

        C.  Cyrilien could not appear for work when she requested an accommodation. ........................................................................... 14

    II.  Cyrilien Was Not Separated Solely by Reason of Her Disability. .......... 16

        A.  Cyrilien was separated from TDCJ because her LWOP expired. ....................................................................................... 16

        B.  The RA did not require TDCJ to provide additional leave time. ............................................................................................ 17

        C.  Cyrilien's remaining arguments fail. ............................................. 18

Conclusion .................................................................................................20

Certificate of Service .............................................................................. 21

Certificate of Compliance ....................................................................... 21

# Table of Authorities

Page(s)

**Cases:**

*Barber v. Nabors Drilling U.S.A., Inc.,*
    130 F.3d 702 (5th Cir. 1997) ..................................................... 13, 16

*Bd. of Trs. of Univ. of Ala. v. Garrett,*
    531 U.S. 356 (2001) .......................................................................... 7

*Byrne v. Avon Products, Inc.,*
    328 F.3d 379 (7th Cir. 2003) ......................................................... 18

*Cannon v. Jacobs Field Servs. N. Am., Inc.,*
    813 F.3d 586 (5th Cir. 2016) ......................................................... 10

*Chandler v. City of Dallas,*
    2 F.3d 1385 (5th Cir. 1993) ............................................................. 9

*Delano-Pyle v. Victoria County,*
    302 F.3d 567 (5th Cir. 2002) ......................................................... 10

*Foreman v. Babcock & Wilcox Co.,*
    117 F.3d 800 (5th Cir. 1997) ......................................................... 11

*Griffin v. United Parcel Serv., Inc.,*
    661 F.3d 216 (5th Cir. 2011) ......................................................... 12

*Hileman v. City of Dallas,*
    115 F.3d 352 (5th Cir. 1997) ........................................................... 9

*Hwang v. Kansas State Univ.,*
    753 F.3d 1159 (10th Cir. 2014) ..................................................... 18

*Jenkins v. Cleco Power, LLC,*
    487 F.3d 309 (5th Cir. 2007) ......................................................... 11

*Kemp v. Holder,*
    610 F.3d 231 (5th Cir. 2010) ......................................................... 10

*Myers v. Hose,*
    50 F.3d 278 (4th Cir. 1995) ............................................................ 17

*Perez v. Region 20 Educ. Serv. Ctr.,*
    307 F.3d 318 (5th Cir. 2002) .......................................................... 19

*Pinkerton v. Spellings,*
    529 F.3d 513 (5th Cir. 2008) .......................................................... 16

*Rogers v. Int'l Marine Terminals, Inc.,*
    87 F.3d 755 (5th Cir. 1996) .......................................... 15, 17, 18

*Rollins v. Home Depot USA,*
    8 F.4th 393 (5th Cir. 2021) ............................................................ 19

*Samper v. Providence St. Vincent Med. Ctr.,*
    675 F.3d 1233 (9th Cir. 2012) ........................................................ 15

*Smith v. Reg'l Transit Auth.,*
    827 F.3d 412 (5th Cir. 2016) ............................................................ 8

*Soledad v. U.S. Dep't of Treasury,*
    304 F.3d 500 (5th Cir. 2002) .......................................................... 16

*Turco v. Hoechst Celanese Corp.,*
    101 F.3d 1090 (5th Cir. 1996) ........................................................ 13

*Washburn v. Harvey,*
    504 F.3d 505 (5th Cir. 2007) ............................................................ 9

**Statutes and Rules:**

28 U.S.C.:
    § 1291 ..................................................................................................... 2
    § 1331 ..................................................................................................... 2

29 U.S.C.:
    § 794(a) ..................................................................... 2, 7, 9, 16
    § 794(b)(1)(A) ........................................................................................ 9
    § 794(d) ................................................................................................ 10

42 U.S.C.:
    § 12111(8) ................................................................................... 10, 14
    § 12111(9)(B) ...................................................................................... 10

Tex. Lab. Code § 21.051(1) .................................................................. 18

Fed. R. App. P. 4(a)(1)(A) ....................................................................... 2

Fed. R. Civ. P. 56(a) ................................................................................. 8

# Introduction

Pamela Cyrilien worked as a maintenance office administrator for the Texas Department of Criminal Justice. To that end, she oversaw a warehouse located just outside of a prison. There, she inventoried parts and supplies needed to maintain the prison, coordinated maintenance and construction work, and ensured that broken items in the prison were fixed. Her job also required her to interact with inmates who worked for her by assisting with prison maintenance. Cyrilien was required to train the inmates to perform certain tasks and ensure that they did not fight and remained safe.

In 2018, Cyrilien was diagnosed with breast cancer. Due to her illness and chemotherapy treatments, she was absent from work for approximately ten months. Eventually, she exhausted all of her leave time, and for that reason, she was separated from TDCJ. Cyrilien now contends that TDCJ violated the Rehabilitation Act by separating her. Although Cyrilien's circumstances are unfortunate, it does not follow that TDCJ violated the Rehabilitation Act. That is so for two primary reasons.

First, Cyrilien was not "otherwise qualified" within the meaning of the Rehabilitation Act. To be "otherwise qualified" an employee must be able to perform the essential functions of her job with or without a reasonable accommodation. But Cyrilien did not meet her burden to show that the accommodation she requested, a desk job, existed and was vacant at the time she requested it. Further, the RA does not require TDCJ to transfer essential functions of Cyrilien's job to others, such as her responsibilities involving inmates.

Second, the RA forbids employers from discriminating against employees "solely" because of a disability, but Cyrilien was separated from TDCJ only because her leave time expired after ten months. Further, Cyrilien did not request, and the RA does not require, TDCJ to provide additional leave beyond the ten months that Cyrilien received.

## Statement of Jurisdiction

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because Cyrilien's claims arise under a federal statute, the Rehabilitation Act. ROA.31; 29 U.S.C. § 794(a). Appellate jurisdiction exists under 28 U.S.C. § 1291 because this is an appeal from a final judgment. ROA.323. The district court entered final judgment on March 10, 2023, ROA.323, and Cyrilien timely appealed on April 9, 2023, ROA.324; Fed. R. App. P. 4(a)(1)(A).

## Issues Presented

The issues presented are:

1. Whether Cyrilien was "otherwise qualified" within the meaning of the Rehabilitation Act.

2. Whether Cyrilien was separated from TDCJ "solely" by reason of her disability within the meaning of the Rehabilitation Act.

S<span style="font-variant: small-caps">TATEMENT OF THE</span> C<span style="font-variant: small-caps">ASE</span>

## I. Factual Background

### A. Cyrilien's job at TDCJ

In 2016, Pamela Cyrilien began working at a TDCJ prison in Navasota, Texas. ROA.106-07. Though her position was formally labeled "administrative assistant," ROA.106, 132, that term did not describe "even half" of her responsibilities, ROA.110. Indeed, Cyrilien's job description referred to her position as a "maintenance office administrator." ROA.132. In that role, she worked in and oversaw a warehouse just outside of the prison itself. ROA.107. Her job required requisitioning, tracking, and inventorying supplies, parts, and equipment needed to maintain the prison. ROA.132. She also coordinated maintenance and construction work. ROA.132. Any time that she received a work order, her job was to make sure that her coworkers completed it. ROA.107. In short, she had to ensure that broken items in the prison were fixed. ROA.107.

Cyrilien's job also required her to work with inmates. According to her job description, one of the "essential functions" of her job involved training and supervising inmates in "administrative support procedures used in unit maintenance and construction programs." ROA.132. According to Cyrilien, that meant she was "responsible for training the inmates on certain jobs that [she] needed them to do." ROA.107. Inmates worked for Cyrilien by assisting with maintenance, and she interacted with about fifty inmates every day. ROA.107.

Because an essential function of her job involved working with inmates, another essential function required her to "assist[] in maintaining the security of assigned

3

offenders." ROA.132. That meant Cyrilien had to ensure that inmates did not fight and remained safe. ROA.108. It also meant Cyrilien had to be able to defend herself against inmates if needed. *See* ROA.108. To that end, she had to take an annual fitness test and be physically fit in order to maintain her job. ROA.108. As Cyrilien explained, her job required "stooping, bending, running, [and] walking." ROA.113. Her job description also lists "additional requirements with or without reasonable accommodation" such as the "ability to walk, stand, sit, kneel, push, stoop, reach above the shoulder, grasp, pull, bend repeatedly, [and] climb stairs." ROA.134. In sum, Cyrilien described her job as "pretty intense." ROA.107.

## B. Cyrilien's illness and leave time

In December of 2018, Cyrilien was diagnosed with breast cancer. ROA.111. By March of 2019, she was receiving chemotherapy. ROA.138. The last day she appeared for work was May 30, 2019. ROA.136. Cyrilien applied for Family Medical Leave, which was approved in June. ROA.140-41. She also began to exhaust various forms of leave, including sick leave and vacation time. ROA.140. To gain additional sick leave, she requested, and received, additional hours from TDCJ's sick leave pool. ROA.145-47. Eventually, however, Cyrilien exhausted all of her leave time. TDCJ's records show that she was placed on Leave Without Pay status, or LWOP, in December of 2019, on the same date that her Family Medical Leave expired. ROA.174, 176. Under TDCJ's policies, an employee must exhaust all of her leave balances before being placed on LWOP, with an exception not relevant here. ROA.228. Additionally, an employee may be placed on medical LWOP for only 180 calendar days within a 12-month period. ROA.228-29. In March of 2020, TDCJ

informed Cyrilien that all of her LWOP time had expired, and consequently, she was separated from TDCJ the next day. ROA.182, 184, 191-92.[1]

## C. Cyrilien's symptoms and request for accommodation

Cyrilien's cancer symptoms and treatment left her unable to perform her job. During her illness, she requested long-term disability benefits. ROA.112, 136. As she explained, "no one can really say when you're going to actually heal from cancer, but I know I wasn't well enough to return to work and I needed more time to rehabilitate my body." ROA.112. She received those disability benefits for two years, and then "it kicked over into Social Security." ROA.112. In June of 2019, her doctor explained that she "developed severe pain and leg weakness due to chemotherapy, preventing her from ambulating or prolonged standing." ROA.143. Around that time, her doctor also estimated that she would be unable to work for any period of time through December of 2019. ROA.151. In January of 2020, her doctor stated that Cyrilien was "totally impaired from working" and estimated that she would be unable to return to full duty work until February of 2021. ROA.180. When asked if she could perform her job, Cyrilien stated "at the time when I was sick, I wasn't able to perform any job." ROA.109. At that time, she "wasn't even able to walk." ROA.109.

---

[1] Though the time between December 2019 and March 2020 is less than 180 calendar days, Cyrilien's exhaustion of LWOP in March of 2020 suggests that she had used LWOP before December of 2019, because LWOP time can be used intermittently, but can only be used for 180 days in a given 12-month period. ROA.228-29. In any event, Cyrilien does not dispute that TDCJ gave her 180 days of LWOP, and that she exhausted all of it. ROA.111; Appellant Br. 11, 15-16.

Near the time that Cyrilien was separated in March 2020, ROA.109, Cyrilien spoke with two TDCJ human resources employees about the possibility of a work accommodation. ROA.110. First, she spoke with Lora Cox and asked if TDCJ could place her somewhere else, but Cox told her that "they didn't have anything at the time." ROA.110. Later, Cyrilien spoke with an HR employee at TDCJ's headquarters in Huntsville, Texas, possibly named "Ms. Stubblefield." ROA.110. Cyrilien "didn't ask specifically for anything" from that employee, and in any event, that employee told her that "they didn't have any accommodations for me." ROA.110. In sum, while Cyrilien tried to look for a desk job at TDCJ, she was not aware that any were available at the time. ROA.109.

## D.  Cyrilien's ongoing health problems

A few months after Cyrilien was separated from TDCJ, ROA.292-93, she suffered a stroke. ROA.113. As she explains it, she suffered seven strokes all at once. ROA.114. The strokes left her "whole left side" numb, and she could not walk or pick up a pencil. ROA.114. As of September 2022, when her deposition was taken, her left side was still weak and numb, she could not feel her fingers or feet, and her ability to stand, walk, stoop, and bend was limited. ROA.114. Since leaving TDCJ, Cyrilien has not applied for any other jobs, nor has she inquired as to whether she could apply for a desk job at TDCJ because she is still recovering. ROA.114. Cyrilien is not seeking reinstatement back to her old job, explaining "I can't do it. I know I can't." ROA.116.

## II. Procedural History

Cyrilien sued TDCJ in August of 2021, originally alleging that TDCJ violated Title I of the Americans with Disabilities Act by failing to provide her with an accommodation and separating her. ROA.7-9. TDCJ moved to dismiss the complaint because the Supreme Court has held that such ADA suits are barred by sovereign immunity. ROA.23-25; *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). Cyrilien responded by amending her complaint to add a claim under section 504 of the Rehabilitation Act based on the same allegations as the ADA claim. ROA.31; 29 U.S.C. § 794(a). TDCJ then renewed its motion to dismiss as to the ADA claim. ROA.46-48. After a hearing and without issuing a written opinion, the district court granted the motion and dismissed the ADA claim. ROA.3.

After discovery, TDCJ moved for summary judgment on the remaining Rehabilitation Act claim. Relevant here, TDCJ argued that: (1) Cyrilien is not a "qualified individual" within the meaning of the Rehabilitation Act; and (2) Cyrilien was not separated from TDCJ "solely" because of her disability within the meaning of the Rehabilitation Act. ROA.89-96. Following a hearing, the district court granted TDCJ's motion without issuing a written opinion and entered final judgment. ROA.5, 323. Cyrilien appealed. ROA.324.

## SUMMARY OF THE ARGUMENT

The Rehabilitation Act states that "no otherwise qualified individual" shall "solely" by reason of her disability, be subjected to discrimination under any program receiving federal financial assistance. 29 U.S.C. § 794(a). The district court

properly granted summary judgment in favor of TDCJ on Cyrilien's RA claim for two primary reasons.

*First*, Cyrilien was not "otherwise qualified" within the meaning of the Rehabilitation Act. To be "otherwise qualified" an employee must be able to perform the essential functions of her job with or without a reasonable accommodation. But Cyrilien did not meet her burden to show that the accommodation she requested, a desk job, existed and was vacant at the time she requested it. Further, the RA does not require TDCJ to transfer the essential functions of Cyrilien's job to others, and multiple essential functions of Cyrilien's job could not be performed at a desk. Finally, Cyrilien could not appear for work at the time she requested an accommodation.

*Second*, Cyrilien was not separated from TDCJ solely by reason of her disability. The evidence shows that Cyrilien was separated only because she exhausted her LWOP and all other forms of leave. Further, Cyrilien did not request, and the RA does not require, TDCJ to provide additional leave time beyond the ten months that she received.

## Standard of Review

The Court reviews "a grant of summary judgment de novo, applying the same standard that the district court applied." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). "Summary judgment is proper where there is no genuine dispute of material fact, and a party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)).

<h1 style="text-align:center">A<span>RGUMENT</span></h1>

The Rehabilitation Act states that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The term "program or activity" includes "all of the operations of" a department of a State. *Id.* § 794(b)(1)(A). Accordingly, "[t]o qualify for relief under the Rehabilitation Act, a plaintiff must prove that (1) he is an 'individual with a disability'; (2) who is 'otherwise qualified'; (3) who worked for a 'program or activity receiving Federal financial assistance'; and (4) that he was discriminated against 'solely by reason of her or his disability.'" *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (same). "The burden of proof for each of these elements lies with the plaintiff." *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993). There is no dispute that TDCJ receives federal financial assistance. ROA.41. But assuming that Cyrilien has a disability within the meaning of the Rehabilitation Act, she has not shown that she is "otherwise qualified" or that she suffered discrimination solely by reason of her disability.

## I. Cyrilien is Not Otherwise Qualified Within The Meaning of The Rehabilitation Act.

Cyrilien's RA claim fails because she has not shown that she is "otherwise qualified." The definition of "otherwise qualified," like most aspects of the RA, is informed by the ADA's standards. The RA expressly incorporates the ADA's

standards in a complaint alleging employment discrimination. 29 U.S.C. § 794(d). As the Court has explained, generally, the "RA and ADA are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). Accordingly, "jurisprudence interpreting either section is applicable to both." *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).

The ADA defines the term "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). So, "[t]o be a qualified employee, [Cyrilien] must be able to show that [she] could either (1) perform the essential functions of the job in spite of [her] disability or (2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of [her] job." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 592 (5th Cir. 2016). "A function is essential if it bears more than a marginal relationship to the employee's job." *Id.* And the ADA defines the term "reasonable accommodation" to include "job restructuring" and "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B).

Cyrilien does not contend that she could perform her old job at TDCJ without an accommodation. *See* Appellant Br. 12; ROA.116. Rather, she contends that TDCJ should have given her a reasonable accommodation in the form of a new job, an unspecified desk job. Appellant Br. 12-13. But Cyrilien has not shown that she is "otherwise qualified" for three reasons. First, she has not shown that the accommodation she requested, a desk job, existed and was vacant at the time she requested it.

Second, the RA does not require TDCJ to transfer the essential functions of Cyrilien's job to others. Third, Cyrilien could not appear for work at the time she requested an accommodation.

### A. Cyrilien has not shown that a desk job existed.

Cyrilien contends that TDCJ should have provided her with an unspecified desk job, Appellant Br. 13, but she has failed to produce any evidence that such a job existed and was vacant at the time she requested it. "When no reasonable accommodation can be made to the plaintiff's prior job, he may be transferred to another position," but "[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citations omitted). "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant. Under the ADA, an employer is not required to give what it does not have." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997).

Here, Cyrilien has never identified a single "desk job" that existed or was vacant at TDCJ when she requested it. As explained above, Cyrilien spoke with two TDCJ human resources employees about the possibility of an accommodation. ROA.110. First, she spoke with Lora Cox. ROA.109-110. According to Cyrilien, "I did ask Laura[2] Cox could they place me somewhere else; and she told me no, they didn't

---

[2] Although Cyrilien's deposition transcript uses the spelling "Laura," TDCJ's records use the spelling "Lora." ROA.191.

have anything at the time." ROA.110. Later, Cyrilien spoke with a human resources employee at TDCJ's headquarters in Huntsville, Texas, possibly named "Ms. Stubblefield." ROA.110. Cyrilien "didn't ask specifically for anything" from that employee, and that employee told her that "they didn't have any accommodations for [her]." ROA.110. In sum, Cyrilien was not "aware of any desk jobs that were available at that time." ROA.109.

Cyrilien mischaracterizes this evidence. She states that Lora Cox "refused to identify" an accommodation, Appellant Br. 13, but in her deposition, when asked to clarify her conversation with Cox, she stated that "I did ask Laura Cox could they place me somewhere else; and she told me no, they didn't have anything at the time." ROA.110. Nor did Terry Bailey, TDCJ's accommodations coordinator, ROA.301, contradict Cox's statements, *contra* Appellant Br. 14. Rather, Bailey testified that TDCJ *has* placed employees who suffered illness in "clerk-type positions, answering the telephones, in the mailroom opening mail." ROA.302. She did not testify that such a job was *available* at the time that Cyrilien requested one and thus did not contradict Lora Cox. ROA.302; *contra* Appellant Br. 14.

Accordingly, TDCJ did not fail to engage in the interactive process that the RA and ADA require. *Contra* Appellant Br. 15. Though an employer violates the RA or ADA if it demonstrates "unwillingness to engage in a good faith interactive process," "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the informal, interactive process is traceable to the employee and not the employer." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). Cyrilien broadly asked for an accommodation, and two TDCJ employees each

told her that none were available at the time. ROA.110. Those statements did not show an unwillingness to engage, rather, they simply showed that TDCJ did not have an available accommodation for Cyrilien at the time. In short, Cyrilien has not met her burden to show that an unspecified desk job existed and was available for her when she requested it.

### B. The RA does not require TDCJ to transfer the essential functions of Cyrilien's job to another employee.

Cyrilien argues that the list of essential functions on her job description includes tasks that could be performed at a desk such as various forms of paperwork, and that the equipment listed for such work includes a computer, calculator, copier, and telephone, which can be used at a desk. Appellant Br. 14-15; ROA.132, 34. But to the extent that Cyrilien suggests that the Rehabilitation Act required TDCJ to permit Cyrilien to perform only those aspects of her job while removing other essential functions, she is incorrect.

The "law does not require an employer to transfer from the disabled employee any of the essential functions of his job." *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997). If it is necessary to transfer any of the essential functions of the job to others, then the employee "is not otherwise qualified." *Id*. "We cannot say that [an employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions." *Id*.; *see Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996) ("[A]n accommodation that would result

13

in other employees having to work harder or longer is not required under the ADA.").

The ADA's definition of the term "qualified individual" explains that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). As explained above, Cyrilien's job description lists additional essential functions beyond paperwork. These include "train[ing] and supervis[ing] offenders in administrative support procedures used in unit maintenance and construction programs" and "assist[ing] in maintaining the security of assigned offenders." ROA.132. As Cyrilien explained, she was "responsible for training the inmates on certain jobs that [she] needed them to do." ROA.107. Additionally, Cyrilien had to ensure that inmates did not fight and remained safe. ROA.108. Cyrilien does not dispute that these were also essential functions of her job, in addition to paperwork. *See* Appellant Br. 14-15. Thus, the RA did not require TDCJ to modify Cyrilien's job functions to include only the parts of her job involving paperwork while transferring other essential functions to different employees.

### C. Cyrilien could not appear for work when she requested an accommodation.

At the time Cyrilien requested an accommodation in 2020, she was not "otherwise qualified" because she could not appear for work. As the Court has held, "an essential element of any . . . job is an ability to appear for work . . . and to complete

assigned tasks within a reasonable period of time." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996); *see Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) ("[A] majority of circuits have endorsed the proposition that in those jobs where performance requires attendance at the job, ir-regular attendance compromises essential job functions."). Because Cyrilien could not attend work, she was not otherwise qualified. *See Rogers*, 87 F.3d at 759.

When asked if she could perform her job, Cyrilien stated "at the time when I was sick, I wasn't able to perform any job." ROA.109. At that time, she "wasn't even able to walk." ROA.109. In June of 2019, Cyrilien requested long-term disabil-ity benefits because she "needed more time to heal." ROA.112. She did not know how long that would take and stated that "no one can really say when you're going to actually heal from cancer, but I know I wasn't well enough to return to work and I needed more time to rehabilitate my body." ROA.112. Also in June of 2019, her doctor estimated that because of her chemotherapy treatments, Cyrilien would be able to work "0 hours per day" and "0 days per week" through December of 2019. ROA.151-52. In January of 2020, Cyrilien's doctor stated that she was "totally im-paired from working" and had been since 2019. ROA.180. The doctor estimated that she would be unable to return to full duty work until February of 2021. ROA.180. Cyrilien stated that her estimated return date was later left open for further evalua-tion. ROA.292.

Faced with this evidence, Cyrilien points to her deposition statement that she "felt" that she could have worked a desk job. ROA.292; Appellant Br.14. But imme-diately following that statement, she also explained that she was not able to hold

things or use her hands, ROA.292, which is consistent with her doctor's statements that she was "totally impaired from working," ROA.180. In any event, as discussed above, Cyrilien has not shown that such a desk job existed at TDCJ, and the RA did not require TDCJ to give Cyrilien a desk job because that would have required transferring her essential job functions involving inmates to others. *See Barber*, 130 F.3d at 709; ROA.110.

## II. Cyrilien Was Not Separated Solely by Reason of Her Disability.

Cyrilien has not shown that she was separated from TDCJ solely by reason of her disability. Unlike the ADA, § 504 of the RA uses a sole causation standard. Under that section, an employee must show that she suffered discrimination "solely by reason of" her disability. 29 U.S.C. § 794(a). As the Court has held, "[l]iability can only be found when the discrimination was 'solely by reason of her or his disability,' not when it is simply a 'motivating factor.'" *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002). The "explicit 'solely by reason of' language of [29 U.S.C. § 794(a)] is the correct standard for determining whether a violation of the provision has occurred." *Pinkerton v. Spellings*, 529 F.3d 513, 516 (5th Cir. 2008). Here, Cyrilien was separated from TDCJ because her LWOP and other leave expired, and the RA did not require TDCJ to provide additional leave time.

### A. Cyrilien was separated from TDCJ because her LWOP expired.

The evidence shows that Cyrilien was separated from TDCJ because her LWOP expired, and for no other reason. Under TDCJ's policies, "all of an employee's accrued leave balances and administrative leave shall be exhausted before an employee

16

is eligible to use LWOP-Medical," with one exception not relevant here. ROA.228. Additionally, an employee may be placed on LWOP for a maximum of 180 days within a 12-month period. ROA.228.

Cyrilien stated that around March of 2020, Lora Cox told her that her leave was running out and that she had to return to work at a certain time. ROA.109-10. Later that same month, TDCJ informed Cyrilien that all of her LWOP had expired, and consequently, she was separated from TDCJ the next day. ROA.182, 184. A TDCJ memo addressed to Lora Cox states that Cyrilien "has exhausted all leave entitlements . . . and we are requesting separation due to expiration of 180 days LWOP." ROA.191. Cyrilien does not dispute that TDCJ gave her 180 days of LWOP, and that she exhausted all of it. ROA.111; Appellant Br. 11, 15-16.

## B.   The RA did not require TDCJ to provide additional leave time.

Cyrilien did not request, nor does she argue, that TDCJ should have given her additional leave time. ROA.110-11; Appellant Br. 13-16. But even if she had, the only possible accommodation would have been indefinite leave, or leave beyond ten months, which the RA does not require. "Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Rogers*, 87 F.3d at 759-60 (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)). Accordingly, the reasonable-accommodation requirement "does not require an employer to wait indefinitely for the employee's medical conditions to be

corrected." *Id*. at 760 (cleaned up). "After all, reasonable accommodations . . . are all about enabling employees to work, not to not work." *Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1161-62 (10th Cir. 2014) (Gorsuch, J.).

"The Rehabilitation Act seeks to prevent employers from callously denying reasonable accommodations that permit otherwise qualified disabled persons to work— not to turn employers into safety net providers for those who cannot work." *Id*. at 1162. As then-Judge Gorsuch wrote regarding six months of leave in a case involving a plaintiff with cancer, "an employee who isn't capable of working for so long isn't an employee capable of performing a job's essential functions—and . . . requiring an employer to keep a job open for so long doesn't qualify as a reasonable accommodation." *Id*. at 1161; *see Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("Inability to work for a multi-month period removes a person from the class protected by the ADA.").

Here, the last day that Cyrilien worked was May 30, 2019, ROA.136, and her LWOP and other forms of leave all expired by March 19, 2020, approximately ten months later. ROA.182, 191. Accordingly, even if Cyrilien had requested additional leave, which she did not, the RA would not have required such a lengthy accommodation.

## C. Cyrilien's remaining arguments fail.

Cyrilien only briefly argues that she was terminated due to her disability. Appellant Br. 15-16. In any event, her arguments are incorrect. She first points to a provision of *Texas* law stating that an employer may not discharge an employee "because of" a disability. Tex. Lab. Code § 21.051(1). Such a claim appears nowhere in

Cyrilien's complaint, ROA.29-33, and is forfeited because it is raised for the first time on appeal, *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Further, Cyrilien nowhere contends that the State has waived sovereign immunity for such a state-law claim in federal court. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002).

Finally, Cyrilien suggests that she was separated due to her disability, and not her LWOP expiration, because TDCJ's policies state that an employee may only be placed on LWOP in the first instance "when a condition affecting the mental or physical health of the employee . . . prevents the employee's performance of duties or essential functions." ROA.228; Appellant Br. 15 But that argument conflates the difference between being *placed* on LWOP in the first instance and *exhausting* LWOP. Cyrilien was not separated from TDCJ because she was *placed* on LWOP. She was separated because she *exhausted* her LWOP and all other leave balances after ten months of absence. And for the reasons explained above, the RA did not require TDCJ to provide additional leave time. In short, Cyrilien has not shown that she was separated for any reason other than that her LWOP expired.

## Conclusion

The Court should affirm the judgment of the district court.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Principal Deputy Solicitor General

/s/ Benjamin Wallace Mendelson
Benjamin Wallace Mendelson
Assistant Solicitor General
Ben.Mendelson@oag.texas.gov

Counsel for Defendant-Appellee

## CERTIFICATE OF SERVICE

On October 18, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Benjamin W. Mendelson
BENJAMIN W. MENDELSON

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,029 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Benjamin W. Mendelson
BENJAMIN W. MENDELSON